# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

MARIE HENN,

        Plaintiff,

V.                        Case No:  2:11-CV-385-FtM-29SPC

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on Plaintiff, Marie Henn's Complaint seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's claim for disability insurance, widow's benefits, and supplemental security income (Doc. # 1) filed on July 11, 2011.  The Plaintiff filed her Brief in Support of the Complaint (Doc. # 24) on March 9, 2012.  The Commissioner filed a Memorandum in Support of the Commissioner's Decision (Doc. # 25) on May 7, 2012.  Plaintiff filed her Reply Brief in support (Doc. #28) on May 30, 2012.  Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 42 U.S.C. 405(g).

## FACTS

### *Procedural History*

Plaintiff protectively filed applications for a period of disability, disability insurance benefits (DIB) and Supplemental Security Income (SSI) on July 19, 2007. (Tr. 13, 126-136). The Agency denied these applications upon initial and reconsideration determinations. (Tr. 62-74, 79-84). Plaintiff filed an application for disabled widow's benefits on May 15, 2008. (Tr. 13). That application was escalated to the hearing level. (Tr. 13). A hearing was held on April 17, 2009, before administrative law judge (ALJ) Mary Brennan. After the hearing (Tr. 25-52), the ALJ found Plaintiff not disabled in a June 1, 2009, decision. (Tr. 10-24). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 20, 2011. (Tr. 1-5). The Commissioner's "final decision" is subject to judicial review. See 42 U.S.C. §§ 405(g), 1383(c)(3).

### *Plaintiff's History*

The Plaintiff, Marie C. Henn, was born on June 27, 1958. (Tr. 126). She was 49 years old, "a younger individual," when she filed her applications for benefits, and was nearly 51 years old when the ALJ rendered her decision in this case. Henn has no more than a 9th grade education and has worked primarily as a waitress, but at the time of her hearing, had been working part time since August 2008 in a retail store. (Tr. 31, 148, 152, 168-171). Henn is insured for benefits through September 2011. (Tr. 137, 154).

Plaintiff alleges disability beginning on April 15, 2007 due to hypertension, emphysema, herpes zoster (shingles), acute viral syndrome favor cytomegalovirus (CMV) virus, and recurrent staph infections. (Tr. 35-38, 40-46, 147).

*Medical History*

The earliest medical records contained in the Exhibit file reflect Henn's emergency treatment for bronchitis in January 2005 and emergency removal of an abscess on her right breast in October 2006, which required "packing removal." (Tr. 221-249). Later, in April 2007, Henn complained of weakness and fatigue, as well as a 12 pound weight loss since the previous month, and thus was hospitalized at NCH Healthcare System where she was treated by Robert Folsom, M.D., for her complaints of malaise, fatigue, low grade fever, general myalgias, and profound weakness, to the extent that she was unable to get out of bed on the day of admission. (Tr. 252, 258, 267). At the time, Henn reported she had been working very hard and that she had been having skin abscesses on her leg and on her breasts that had resolved with antibiotic treatment. (Tr. 255). Laboratory tests showed a "relative lymphosytosis" and anemia, and "a viral illness such as cytomegalovirus or Epstein-Barr virus" was suspected. (Tr. 257, 259). Henn was treated with Levaquin and her severe weakness improved so that she was discharged with a further course of Levaquin. (Tr. 258, 260). Her diagnoses were: severe viral illness, etiology undetermined; borderline B12 deficiency; macrocytic anemia; labile hypertension; and history of recurrent skin abscesses and bronchitis/pneumonitis. (Tr. 260). Significantly, laboratory reports dated earlier, in March 2007 confirmed moderate staphloccoccus aureus growth along with other abnormalities. (Tr. 262- 264; <u>see also</u> Tr. 279).

Dr. Folsom's office notes document Henn's follow-up care for her breast abscess in October 2006, as well as bronchitis and right chest wall pain in December 2006. (Tr. 268). In January and February 2007, Dr. Folsom recorded that Henn may have a right rib fracture and that her right breast abscess had recurred. (Tr. 267). Following her hospitalization, Henn reported to

Dr. Folsom in May 2007, that she still felt "totally exhausted with myalgias and excessive somnolence." (Tr. 266). Dr. Folsom noted that she was not working and would remain off work for an additional two or three weeks. Id. His specific diagnoses were acute viral syndrome favor CMV virus; Vitamin B12 deficiency; and labile hypertension. Id. Dr. Folsom saw Henn again in October 2007 when she complained of "recurrent night sweats, intermittent fevers, malaise and fatigue," as well as "hearing loss in her left ear which appears to be from serousotitis." (Tr. 385). He noted that Henn's hypertension continued to be labile and well controlled, at 110/62 and that she remained off all medications, but at that time he prescribed a ten day trial of Cipro and Zyrtec "for left serous otitis." Id.

In January 2008, Henn was treated twice on an emergency basis at NCH, for two episodes of bronchitis, for which she was given a "Z-Pak Prednisone," an Advair inhaler, Robitussin, and Levaquin. (Tr. 324- 336). During the latter admission, Henn described burning, radiating chest pain, as well as wheezing and tightness. (Tr. 326). Her breathing improved with treatment and she was advised to follow-up with her own physician. (Tr. 327).

Henn began treatment at Neighborhood Health Clinic on January 5, 2009, when she was seen for follow-up of shingles. (Tr. 384). It was noted that Henn had been treated in the hospital for what she thought was a kidney stone, but a vesicular rash appeared on her right midback for which she was given Lyrica which had "modestly controlled" her "fair amount of postherpetic pain." Id. The physician, Newell Falkinburg, M.D., continued the Lyrica, but also started Henn on Celebrex and Tramadol. Id. Five days later, however, Henn was seen at the clinic again, by a different physician, appearing anxious concerning a rash on her left elbow, which was diagnosed as "Post herpetic neuralgia." (Tr. 383). The doctor's notes indicate Henn "has a history of

4

anxiety and withdrawal symptoms from trying to stop smoking," and additional help to stop smoking was offered. Id. Henn apparently was seen again briefly in February 2009, when the physician simply wrote that she had been to "the clinic a number of times with chronic pain from herpetic neuralgia," that she reported no improvement but "manages to get by on Ultram, 50mg, once or sometimes twice a day and also Lyrica 150 mg twice a day," and that she was unable to tolerate the Nicotine patches. (Tr. 382).

*Consultative Examinations*

At the request of the State agency, Henn underwent consultative examinations with Rajan Sareen, M.D., an internal medicine and cardiology specialist, and Nilsa Rivera, Ph.D., in September and November 2007, respectively. (Tr. 286-297, 306-309).

Dr. Sareen conducted laboratory and spirometry testing as well as a range of motion examination. (Tr. 286-297). Henn reported her numerous symptoms to Dr. Sareen, stating that "at times she lays in bed for 7 days." (Tr. 287). She also reported 50% hearing loss, depression, difficulty carrying objects due to stiffness, multiple aches and fevers, as well as shortness of breath with intermittent chest pain all day with inability to walk more than ½ block. Id. Dr. Sareen's examination essentially was unremarkable except for his findings of COPD secondary to smoking, i.e., "PFTs show moderately severe obstructive and restrictive COPD." (Tr. 288). However, he did note that Henn's "HPN is poorly controlled;" she has difficulty carrying objects above her head because of pain and stiffness; she could hear conversational speech from a distance of 6 feet; she had lost more than 50 pounds over a six-month period; and that her depression "needs to be treated." Id.

Dr. Rivera indicated she had reviewed one page of Dr. Sareen's report and recorded Henn's psychologically related symptoms as: depressed mood; appetite disturbance; sleep disturbance; fatigue/low energy; poor concentration; poor grooming; mood swings; agitation; emotionality; phobias; obsessions/compulsions; irritability; grief; panic attacks; aggressive behaviors; conduct problems; oppositional behavior; social isolation; worthlessness; elevated mood; hyperactivity; loss of touch with reality; stomach problems; significant weight loss; physical trauma victim; and generalized anxiety. (Tr. 307). She also described her physical problems, including COPD, frequent staph infections, and fatigue and difficulty breathing. Id.

Dr. Rivera observed that Henn was friendly and cooperative and recorded her report that she worked as a waitress/server for over 30 years but had to stop due to her physical health, that she "feels medically unable to function as a result of her numerous infections." (Tr. 308). During the mental status examination, Henn displayed average intelligence, was able to perform serial sevens slowly and accurately with self-correction, and exhibited only fair insight. (Tr. 309). Dr. Rivera "cautiously offered" her diagnoses as Adjustment Disorder with depressed and anxious mood; Rule Out Major Depression, recurrent; and Passive Dependent Personality Features. Id. She gave a "fair" prognosis and indicated Henn might benefit from counseling for her depression. Id.

### State Agency Physical and Mental RFC Assessments

State agency medical and psychological consultants reviewed the evidence available and completed physical RFC assessment forms and Psychiatric Review Technique forms ("PRTFs"). (Tr. 298-305, 310-323, 353-374). Both physical RFC assessment forms, dated October 18, 2007 and March 19, 2008, reflect the opinions of the reviewing physicians that Henn could perform

essentially unlimited light work activity, with avoidance of concentrated exposure to fumes, odors, etc., indicated on the latter form. (Tr. 298-305, 353-360). The reviewing psychologists, Catherine Nunez, Ph.D. and Ellen Resch, Ph.D., both indicated on the PRTFs dated December 2007 and March 2008, that Henn had a non-severe Adjustment Disorder that imposed no more than mild functional limitations. (Tr. 310, 313, 320, 361, 364, 371).

## *Hearing Testimony*

Represented by counsel, Henn and a vocational expert ("VE") testified at the hearing held on April 17, 2009. (Tr. 25-52). Henn testified that she completed the ninth grade and that she was currently working at a retail store from 3:00 to 8:30 p.m., which she had done since August or September 2008, earning $10 an hour. (Tr. 30-33). She described her duties as helping customers find things and explained that as a "key carrier" she locked up the doors at night. (Tr. 33). Henn reported that she worked a five-hour shift and spent about three hours standing during that time, and that otherwise, she sits in the office waiting for her symptoms to subside, and if they do not she is driven home. (Tr. 46, 47). She reported that she expected her hours to be cut down to about 20 hours when the busy season subsided because "I can't do it." (Tr. 33, 47). Before that job, Henn worked as a bartender and waitress, until she got sick "from working so many doubles," she testified, and she reported she had quit her job about a week before she was hospitalized in April 2007, because she could not even lift a tray. (Tr. 34, 35, 42).

Henn explained that she could no longer work because, "I get very, very sick and weak and I have like it seems like seizures, like I shake, I can't control myself, all I can do is lay down flat and wait for it to pass," that can take an hour or a couple of days. (Tr. 35, 40, 45). She added that about every three months, "I can't walk, I can't do anything, I can't even lift my arms up."

(Tr. 35).  Henn explained that she has to sit forward in a chair so that her back will not touch it and that she has to wear loose clothing due to skin sensitivity. (Tr. 43).

Henn described her symptoms further as severe shingles caused by CMV virus that makes her weaker and makes her back feel like its "on fire and I'm breaking out on my hands, on my legs from it too," feeling "like my skin is being pulled off my back;" fevers and chills, and feeling delirious; wheezing badly in the middle of the day; severe sensitivity to touch in her back; painful skin abscesses and staph infections causing itching and burning; and chronic bronchitis and emphysema with chest wall pain. (Tr. 35, 36, 40, 41, 43- 45).  Henn testified that she could not lift more than five pounds, and that she could stand or walk for an hour or hour and a half, but then would have to sit for about 20 minutes due to pain in her back and feeling weak. (Tr. 42).

Regarding her medical treatment, Henn testified that she went to the clinic once a month "just for her pills," i.e., Lyrica, Tramadol, Effrin, and Aspirins for her CMV fevers. (Tr. 36, 37, 39-41). She explained that she only received treatment for her emphysema and shingles, that "they're not treating me for the CMV virus nor the other problem, and that "they don't treat me they just know that I have shingles and they've got the medicine." (Tr. 36, 37).

Henn testified that during the day she doesn't really cook, may just buy a sandwich; that she keeps her small living space, "one little bed and one little dresser," picked up, and that she does her laundry about every two weeks. (Tr. 38).

The VE characterized Henn's past work as a waitress and bartender as light, semiskilled work, and her job as a sales person as light semi-skilled work. (Tr. 50). At that point there were no questions asked of the VE by either the ALJ or Henn's attorney. (Tr. 51).

The Administrative Law Judge Mary Brennan issued her "Notice of Decision – Unfavorable" on June 1, 2009. (Tr. 9-22). The ALJ found that Plaintiff was not disabled. (Tr. 30-48). Specifically, the ALJ found that Plaintiff had the residual functional capacity (RFC) for sedentary work. (Tr. 19, Finding No. 7).[2] The ALJ also found that Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 19, Finding 7). The ALJ found that Plaintiff could not return to her past relevant work. (Tr. 22, Finding No. 8). The ALJ relied on the Medical Vocational Guidelines (Grids), 20 C.F.R. pt. 404, subpt. P., app. 2 (2012), to determine that other work existed in the economy that Plaintiff could perform, prior to the age of fifty. (Tr. 23). The ALJ found Plaintiff would have been found disabled at age 50 but she did not qualify for disability because she performed substantial gainful activity (SGA) beginning in August 2008 and continued to work until at least the time of the hearing. (Tr. 16, 23).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a claimant is disabled, the ALJ must follow

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. See 20 C.F.R. §§ 404.1567(a), 416.967(a) (2012).

the sequential inquiry described in the regulation.[3] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

---

[3] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

*Step 1*. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

*Step 2*. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

*Step 3*. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the claimant is disabled. If not, the next question must be resolved.

*Step 4*. Can the claimant perform his or her former work? If the claimant can perform his or past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

*Step 5*. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (*per curiam*).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the case. 42 U.S.C. § 405(g) (sentence four). The District Court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the District Court with sufficient reasoning to determine that the Commissioner properly applied the law. Williams v. Comm'r, 407 F. Supp. 2d 1297, 1299-1300 (M.D. Fla. 2005) (citing Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994)); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. (42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the claimant is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff sets forth five main issues for which she argues remand is proper:  (1)  the ALJ's finding that Henn engaged in substantial gainful activity since August 2008 is not based

on substantial evidence as the ALJ miscalculated Henn's earnings and failed to consider the work subsidy provided by her employer to allow her to work; (2) accepting the ALJ's finding that Henn is limited to the performance of sedentary work, this Court should remand with instructions to award benefits from her 50th birthday in accordance with Grid Rule 201.10, and to reassess her entitlement prior to that date; (3) the ALJ reversibly erred by failing to properly assess Henn's credibility; (4) the ALJ's finding that Henn's "current work" as a sales person "is consistent with sedentary work as performed" is not supported by substantial evidence, because the ALJ has misstated Henn's testimony and because this work was never performed at the substantial gainful activity level. The Court will consider each of these arguments below.

The Court notes that the ALJ determined that Plaintiff had not engaged in substantial gainful activity from April 15, 2007, the alleged onset date, to July, 2008. (Finding No. 4, Tr. 16). The ALJ determined, however, that she had engaged in substantial gainful activity since August 2008. (Id.). The substantial gainful activity determination is the first step in the five-step analysis that the ALJ is required to use. 20 C.F.R. §§ 404.1520(a), 404.920(a). If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next step in the sequential analysis. The Court finds it would be helpful to analyze the issues presented by Plaintiff according to the two time frames as previously discussed.

## I. April 15, 2007 (the alleged onset date) to July 2008

*Whether the ALJ properly used the medical-vocational guidelines to find Plaintiff not disabled*

Having found that the Plaintiff had not engaged in substantial gainful activity from April 5, 2007 to July 2008, the ALJ moved past Step One in the sequential inquiry for that period of time only. The ALJ determined that Henn retains the residual functional capacity to perform the

"full range of sedentary work" with the additional limitations that she "must avoid concentrated exposure to fumes, odors, gases, and poor ventilation." (Tr. 19). The ALJ further determined that Henn is unable to perform any past relevant work, and, considering her age of 48 at the onset of her disability, found that she was not disabled from her alleged onset date to age 50 in accordance with Rule 201.19 of the Medical-Vocational Guidelines.[4] (Tr. 22-23).

At the time of her alleged onset date, Plaintiff was 48 years of age, defined as a younger individual, and had a limited education. (Tr. 30, 126, 134). See 20 C.F.R. §§ 404.1563(c), 404.1564(b)(3), 416.963(c), 416.964(b)(3) (2012). The ALJ found that Plaintiff could frequently lift and carry up to ten pounds, sit for approximately six hours in an eight-hour workday, and stand/walk up to two hours in an eight-hour workday, which corresponds to the definition of sedentary work. (Tr. 19, Finding No. 7). See 20 C.F.R. §§ 404.1567(a), 416.967(a) (2012). The ALJ also found Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 19, Finding No. 7).

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Augusto v. Commissioner of Social Security, 2008 WL 186541 *7 (M.D. Fla. Jan. 18, 2008) (citing Foote, 67 F.3d at 1558). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir.1989). This burden may sometimes be met through exclusive reliance on the grids. Augusto, 2008 WL 186541 at *7. Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an

---

[4] Rule 201.10 applies when an individual is "closely approaching advanced age," has a limited or less education, and has a skilled or semi-skilled past work experience with no transferable skills.

exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Augusto, 2008 WL 186541 at *7 (citing Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed.2d 66 (1983)) (holding exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Augusto, 2008 WL 186541 at *7 (citing Walter v. Bowen, 826 F.2d 996, 1002-3 (11th Cir.1987)). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. Augusto, 2008 WL 186541 at *7 (citing Foote, 67 F.3d at 1559). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. Augusto, 2008 WL 186541 at *7. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Id. (citing Foote, 67 F.3d at 1559). To preclude use of the grids, a limitation must significantly or severely restrict the ability to work. A minor or merely possible restriction is insufficient. Augusto, 2008 WL 186541 at *7 (citing Kimbrough v. Sec'y of Health & Human Servs., 801 F.2d 794, 796 (6th Cir. 1986)).

In this case, the ALJ called a vocational expert (VE) to the hearing, but did not pose any hypothetical questions to the vocational expert. (Tr. 50-51). Plaintiff argues hypothetical question testimony from a VE was needed in this case to meet the Commissioner's burden of

proof due to Henn's nonexertional limitations and her inability to perform the full range of work. Specifically, Plaintiff argues that VE testimony was also needed in light of Dr. Sareen's finding that Henn has difficulty carrying objects above her head because of pain and stiffness and because of Henn's skin infection and her need to frequently miss work two to three days per month, which impact her ability to perform the duties of her part-time sales clerk position. (Tr. 219-220, 288).

An ALJ may exclusively rely on the Grids, and testimony from a vocational expert is not required, if a claimant can perform the full range of work at a particular exertional level given her exertional limitations and her nonexertional limitations do not prevent the performance of a wide range of work at the particular exertional level. See Phillips, 357 F.3d at 1242-43. When a claimant's vocational characteristics coincide with the factors of a rule in the Grids, the existence of jobs in the national economy is established and the claimant is considered not disabled. See 20 C.F.R. §§ 404.1569, 404.1569a, §§ 416.969, 416.969a; 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b); Phillips, 357 F.3d at 1239-40, 1242-43.

In this case, the ALJ did consider Dr. Sareen's findings in her RFC determination and accorded little weight to his opinion since it was not consistent with his objective medical findings. (Tr. 22). The ALJ further considered Plaintiff's skin lesions, or shingles, and noted that Dr. Falkinburg assessed that her shingles was healed with post-herpetic pain. (Tr. 21). With regard to Plaintiff's contention that she is unable to work, the ALJ found that those contentions were not fully supported by the record. (Tr. 21). Accordingly, the ALJ took into consideration Plaintiff's nonexertional limitations and determined that these limitations did not prevent the performance of a wide range of work at the sedentary level. Plaintiff has failed to show that she

could not perform the full range of sedentary work or that she had nonexertional limitations that prevented her from performing a wide range of work at the sedentary exertional level. Thus, the ALJ's decision was based on substantial evidence and therefore exclusive reliance on the grids, without posing a hypothetical question to the VE, was appropriate. Given Plaintiff's residual functional capacity for sedentary work, the ALJ correctly used Grid rule 201.19 to find that Plaintiff was not disabled, prior to her 50th birthday. (Tr. 19). See 20 C.F.R. pt. 404, subpt. P, app. 2, table no. 1, § 201.19.

*Whether the ALJ properly assessed Plaintiff's subjective complaints of pain and other symptoms*

The ALJ determined that while Henn's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with her RFC finding. (Tr. 21). The ALJ stated that she did not find Henn's "contentions regarding her inability to work fully supported by the record." (Tr. 21).

Pain is a non-exertional impairment. Phillips v. Barnhart, 357 F.3d 1232, 1243 n.11 (11th Cir. 2004). Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (*e.g.* medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical

impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part pain standard. Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A). See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the alleged symptoms but the claimant has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must then evaluate the intensity and persistence of the alleged symptoms to determine how they limit the claimant's capacity for work. See id.; 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) (2012). During this evaluation, the ALJ must consider the claimant's testimony regarding her symptoms, including any inconsistencies between the testimony and the other evidence. See 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4) (2012).

In this case, the ALJ acknowledged that Henn testified regarding her episodes of extreme weakness and inability to move her body, and that her immune system is low and she suffers from active shingles. (Tr. 20). However, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent alleged. (Tr. 21). The ALJ provided numerous citations to evidence in the record to support her

credibility finding. (Tr. 21-22). See Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (An ALJ may discredit a claimant's testimony of disabling symptoms as not credible if she provides "explicit and adequate reasons" for doing so; not merely a broad rejection.). For example, the ALJ noted that even though Plaintiff alleges hearing loss, she did not testify that her hearing prevented her from working and Dr. Sareen's consultive examination indicated that Plaintiff's ears and hearing were normal. (Tr. 21). Further, Plaintiff alleges hypertension, but the ALJ noted that October 2007 treatment records indicate her blood pressure was well controlled and she remained off all her medication. (Tr. 21).

The ALJ acknowledged that Plaintiff's treating physician, Dr. Robert Folsum, treated Plaintiff for bronchitis, right chest wall pain, recurrent superficial skin abscesses, malaise fatigue, CMV, vitamin B12 deficiency, and labile hypertension. (Tr. 16, 265-269). However, the mere diagnosis of a condition does not establish functional limitations, and Plaintiff's medical records do not indicate Plaintiff was unable to perform sedentary work as found by the ALJ. (Tr. 19-22, 221-297, 306-309, 324-352, 377-380, 382-385). In September 2007, Dr. Rajan Sareen performed a consultative examination (Tr. 287-297). The ALJ observed that Dr. Sareen reported no findings of CMV or a staph infection. (Tr. 21, 287-288). The ALJ noted that Spirometry testing revealed moderate obstructive and restrictive COPD (Tr. 22). Dr. Sareen indicated that the Pulmonary Function Studies revealed moderately severe obstructive and restrictive COPD. (Tr. 288). The ALJ limited Plaintiff to sedentary work with the additional limitation of avoidance of concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 19). The ALJ also acknowledged that Dr. Sareen opined that Plaintiff has difficulty carrying objects above her head because of pain and stiffness. (Tr. 22, 288). However, the ALJ properly

accorded little weight to Dr. Sareen's opinion in this regard as it was inconsistent with his findings on examination. (Tr. 22, 287). Thus, the undersigned recommends that the ALJ properly considered the relevant evidence and supported her credibility findings in accordance with the law.

*Whether the ALJ properly found Plaintiff's past relevant work as a sales person was sedentary work*

The ALJ found that Plaintiff had the RFC for sedentary work based at least in part on the ALJ's determination that Plaintiff testified that she performed her current job at Hanesbrands as sedentary, even though the VE classified it as light. (Tr. 19, Finding No. 7). But the ALJ did determine that Henn cannot return to any past relevant work as a Sales Person, Waitress, and Bartender because these jobs are classified as "light, semi-skilled work."[5] (Tr. 22). The ALJ further noted:

> Although the Vocational Expert described the claimant's current retail job as light, the claimant testified that she performed it as sedentary. She stated that she does not walk or stand for over two hours in her shift and sits during her shift for extended periods. Therefore, per her testimony, her current job is consistent with sedentary work as performed and so, the residual functional capacity at sedentary is not contradicted by her current work. (Tr. 22).

Plaintiff first argues that her past relevant work as a sales clerk at Hanesbrands was not sedentary work, but should have been found by the ALJ as light work. Plaintiff also argues that a job must be performed at the substantial gainful activity level in order to be considered past relevant work and since Henn's job as a sales clerk at Hanesbrands was not performed at SGA levels, it cannot be considered past relevant work. (Pl. Br. at 19). The Court recommends that Plaintiff's arguments are moot, as the ALJ found that Plaintiff could not perform her past relevant work and

---

[5] The Commissioner defines light work as being on one's feet up to two-thirds of a workday, or "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with sitting occurring intermittently during the remaining time." SSR 83-10, 1983 WL 31251 (S.S.A. 1996).

as discussed above, the ALJ's determination that Plaintiff had the RFC for sedentary work is based on substantial evidence.

## II. **August 2008 through the date of the ALJ's decision**

*Whether the ALJ properly found Plaintiff engaged in substantial gainful activity since August 2008*

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity from April 15, 2007, the alleged onset date, to July 2008. But the ALJ found Plaintiff had engaged in substantial gainful activity since August 2008. (Finding No. 4, Tr. 16). Plaintiff argues that the ALJ's finding that Plaintiff engaged in substantial gainful activity since August 2008 is not based on substantial evidence as the ALJ miscalculated Plaintiff's earnings and failed to consider the work subsidy provided by her employer to allow her to work. The ALJ determined at Step One that Henn engaged in substantial gainful activity since August 2008. (Tr. 16). In so finding, the ALJ stated:

> the claimant testified that she returned to work part-time as a Sales Clerk for Hanes. She also stated that she works 32 hours per week at $10 per hour. Additionally, she testified that she continues to work at Hanes through the present and earns between the amounts of $320 to $350 every week. Moreover, the claimant produced records and pay stubs at the hearing and indicated that they were representative of the wages she received at Hanes. The documentation shows that the claimant earned $4,932.00 between the period of August 2008 and December 2008. Claimant testified that she continues to be employed and earn comparable wages. Contrary to counsel's assertion in her brief, this exceeds substantial gainful activity (SGA) for the period of August 2008 through April, 2009, the date of hearing. Further, this exceeds the period of an unsuccessful work attempt since the claimant has worked at substantial gainful activity for a period of eight months.

(Tr. 16). Plaintiff asserts that the findings cannot be sustained because the ALJ's statement that Plaintiff's 2008 earnings exceeded SGA is incorrect and the ALJ failed to address the statement

20

from Henn's employer documenting that Henn received a subsidy. (Tr. 118). The Court will consider each of these arguments in turn.

Substantial gainful activity is work that involves significant mental and physical activities and is usually performed for pay or profit. 20 C.F.R. § 404.1572. "Substantial" work activity is "work activity that involves doing significant physical or mental activities. . . . [W]ork may be substantial even if it is done on a part-time basis or . . . less, [one] get[s] paid less, or ha[s] less responsibility than . . . before." Id. Work activity is "gainful" if it "is the kind of work usually done for pay or profit, whether or not a profit is realized." Id. Among the factors to be considered in determining whether work is substantial gainful activity are time spent in the work; quality of the performance; whether the worker is self-employed; the need for special conditions or supervision; use of experience, skills, and responsibilities; and whether work contributes substantially to the operation of the business. Johnson v. Sullivan, 929 F.2d 596, 597 (11th Cir. 1991) (citing 20 C.F.R. § 404.1573).

If work is done under special conditions it may not be classified as substantial gainful activity. Federal Regulations list several exemplary factors: (1) You required and received special assistance from other employees in performing your work; (2) You were allowed to work irregular hours or take frequent rest periods; (3) You were provided with special equipment or were assigned work especially suited to your impairment; (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work; (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your

employer's concern for your welfare. 20 C.F.R. § 1573(c). Earnings above a certain dollar threshold level create a presumption of substantial gainful activity, but this is a rebuttable presumption. Johnson, 929 F.2d at 598. The regulations use earnings guidelines to assist in the determination of whether a claimant's past work constitute substantial gainful activity. See 20 C.F.R. §§ 404.1574, 416.974. Generally, a claimant who has worked for substantial earnings will be found able to do SGA.[6] Id. §§ 404.1574(a)(1), 416.974(a)(1). In 2008, the Commissioner determined a person making $940 or more per month was engaging in SGA. Where, as here, a claimant's work was continuous without significant change in work patterns or earnings, and there was no change in the SGA activity earning levels, the Commissioner averages a claimant's earnings over the entire period of work requiring evaluation to determine if a claimant has done SGA. See 20 C.F.R. §§ 404.1574a(a), 416.974a(a).

Plaintiff argues that the ALJ claimed that Henn's 2008 income tax return reflected her income as $4,932 between August 2008 and December 2008 (Tr. 16), when in fact her 2008 tax return documents earnings of $4,689, which averages to $937.80 per month – below the 2008 SGA level of $940 per month. (Tr. 216-18). The ALJ's decision notes that Plaintiff produced documentation at the hearing which shows that she earned $4,932 between the period of August 2008 and December 2008. Although Plaintiff's 2008 tax return (Tr. 216-18) reflects earnings of $4,689, her W-2s from this time period show wages of $84.00 from Frankcrum 2, Inc. (Tr. 216), where Plaintiff testified that she worked one day (Tr. 33-34), and $4,804 from Hanesbrands, Inc. (Tr. 218), where she worked from August 2008 until at least the time of the hearing. (Tr. 32-33). Plaintiff's earnings of $4,804.70 during the five month period, August 2008 to December 2008,

---

[6] See Social Security Administration, Substantial Gainful Activity <http://www.ssa.gov/oact/cola/sga.html>.

averaged $960.94. Consequently, even if the ALJ miscalculated the documentation provided to her at the hearing, Plaintiff's W-2 from Hanesbrands alone shows her earnings exceeded SGA level between August 2008 and December 2008.

However, the Court agrees with Plaintiff that the ALJ failed to address the statement of Henn's employer that she received a 20% accommodation at the work place. (Tr. 118, 139, 219). On this "Supervisor Work Form," the employer identified Henn's salesperson job as a "Key Carrier." (Tr. 219). Plaintiff's supervisor further indicated that Plaintiff's co-workers had to assume 20% of Plaintiff's work due to Plaintiff's skin lesions. (Tr. 139). According to Plaintiff's supervisor, Plaintiff was unable to measure customers, assist customers in trying on garments, or fit garments on customers. (Tr. 139). It also was reflected that Henn missed two to three days of work each month due to sickness or doctor appointments. (Tr. 220). Plaintiff argues that as such, the value of her work, "when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid" for her work. 20 C.F.R. § 404.1574(a)(2). Plaintiff requests that this Court remand with instructions to further develop the record regarding Henn's work subsidy and to address what percentage of the monies paid by Henn's employer constituted a subsidy which should be deducted from the earnings guidelines.

It must be determined whether her reported earnings per month are the actual value of the work she performed, or whether this amount is somehow the result of a subsidy provided by her employer. If so, the amount of the subsidy must be determined and subtracted from the reported monthly earnings before a comparison to the earnings guidelines can be made. See SSR 83-33. It is the case that 20 C.F.R. § 404.1574(a)(2) provides that subsidized earnings may take an employee out of the realm of SGA. Social Security Ruling (SSR) 83-33, 1983 WL 31255, *2

23

(S.S.A.) (1983), provides that, when determining SGA, only earnings that represent a person's own productivity are considered and, before the earnings guidelines at 20 C.F.R. §§ 404.1574, 416.974 are applied, "it is necessary to ascertain what portion of the individual's earnings represents the actual value of the work he or she performed." The actual value of work performed is ascertained by Plaintiff's gross earnings, less any subsidized earnings provided by Plaintiff's employer. These "countable earnings" are then compared to the earnings guideline of $940 per month in 2008.

The presumption of substantial gainful activity based upon Plaintiff's 2008 earnings can be rebutted by evidence of the nature of the applicant's work, the conditions of employment, and the adequacy of the applicant's performance. 20 C.F.R. § 404.1573. In this case, Plaintiff submitted the "Supervisor Work Form" to the ALJ for consideration in the determination of whether Plaintiff could perform substantial gainful activity. Other than an acknowledgment by the ALJ at the hearing that she had received the Form (Tr. 28), this Court has no other indication that the ALJ considered whether Plaintiff's work was subsidized pursuant to 20 C.F.R. § 404.1574(a)(2). The ALJ concluded though that "[w]hile claimant could have met the grids at age 50, she has been performing substantial gainful activity since that time and therefore must be disqualified." (Tr. 23). Therefore, the undersigned recommends that the ALJ's determination that Plaintiff was engaged in substantial gainful activity since August 2008 is not based on substantial evidence and this matter should be remanded for further development of the record on this issue.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **REMANDED** on the issue of whether Plaintiff was engaged in substantial gainful activity for the time period after August 2008.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 14th Day of June, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record